**SANNES et al.**

v.

**JEFF WYLER CHEVROLET, INC.**

Court of Common Pleas of Ohio,
Clermont County.

No. 97CV0916.

Decided Feb. 11, 1999.

*Ronald L. Burdge,* for plaintiffs.

*Barron, Peck & Bennie* and *Michael S. Barron;* and *Donald W. White,* for defendant.

ROBERT P. RINGLAND, Judge.

This matter came before the court on joint motions for summary judgment filed by plaintiffs Michelle Sannes and Andrew Strasinger and defendant Jeff Wyler Chevrolet, Inc.. Oral argument was presented after written memoranda were submitted, and the matter was taken under advisement.

Plaintiffs filed this complaint against defendant, alleging that defendant violated the Ohio Credit Services Organization Act, R.C. 4712.01 *et seq.*, and the Ohio Consumer Sales Practices Act, R.C. 1345.01 *et seq.* The gist of plaintiffs' complaint is that defendant advertised that it would help consumers rebuild their credit by assisting them in getting a car loan with one of Ohio's leading lenders. Plaintiffs claim that defendant is therefore a "credit services organization," as that term is defined in R.C. 4712.01(C)., and is subject to restrictions under the Act.

Plaintiffs allege that on September 15, 1997, they entered into a consumer transaction with defendant, in that defendant agreed to sell to Banc One Acceptance Corporation ("Banc One"), and that Banc One simultaneously agreed to lease, a certain motor vehicle, being a 1997 Chevrolet truck, to plaintiffs. During the time in question, defendant and Banc One had an agreement whereby defendant was authorized to obtain applications and assist its customers in completing lease agreements with Banc One in connection with financing of leases of vehicles sold by defendant. At the commencement of the lease agreement, plaintiffs paid $1,346.62 to defendant. Of the $1,346.62, plaintiffs paid $446.62 in cash (a check) and the remaining $900 via trade-in equity.[1] Before entering into this transaction, plaintiffs had read an advertisement from defendant in a local newspaper that claimed defendant could help re-establish credit. Plaintiffs attach several copies of advertisements from defendant, which state as follows:

"HAVE YOU WRECKED YOUR CREDIT? You cannot be refused due to past credit history. WE UNDERSTAND YOUR CREDIT PROBLEMS! Putting your loan in the hands of amateurs may hurt your chance of loan approval. Re-establish your credit thru one of the largest banks in Ohio! Call 1–888–292–EGGS For Credit Info." (Reference to footnote deleted.)

The plaintiffs decided after they returned home that evening that they wanted to rescind the transaction, but defendant refused to allow them to do so. Under R.C. 4712.05, a credit services organization must allow a buyer to rescind a transaction for three business days after the transaction is made.

Defendant has moved for summary judgment, arguing that it is not a credit services organization as that term is defined in R.C. 4712.01(C). Defendant further argues that plaintiffs are not "buyers" as that term is used in R.C. 4712.01(A). Plaintiffs also have moved for summary judgment, alleging that the terms "credit services organization" and "buyer" apply to defendant and plain-

---

1. At the time of the transaction in question, the equity in plaintiffs' trade-in vehicle was approximated to be $900. The actual equity at the time defendant paid off the existing loan was $1,068.48. Defendant then refunded the $168.48 difference to the plaintiffs.

tiffs, respectively, and that defendant has presented no evidence that it is in compliance with the Credit Services Organization Act.

Before summary judgment can be granted, a party must show that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) * * * reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion * * * is made." *State ex rel. Spencer v. E. Liverpool Planning Comm.* (1997), 80 Ohio St.3d 297, 298, 685 N.E.2d 1251, 1252. When a properly supported motion for summary judgment is made, the nonmoving party may not rest on mere denials in the pleading, but must respond with specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274; *St. Vincent Med. Ctr. v. Sader* (1995), 100 Ohio App.3d 379, 383, 654 N.E.2d 144, 146. The motion "forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099.

To determine whether defendant meets the definition of "credit services organization," the statute must be analyzed. According to R.C. 4712.01(C)(1), a credit services organization is defined as "any person that charges or receives, directly from the buyer, money or other valuable consideration readily convertible into money, and that sells, provides, or performs, or represents that the person can or will sell, provide, or perform, any of the following services:

"(a) Improving a buyer's credit record, history, or rating;

"(b) Obtaining an extension of credit for a buyer;

"(c) Providing advice or assistance to a buyer in connection with division (C)(1)(a) or (b) of this section;

"(d) Removing adverse credit information that is accurate and not obsolete from the buyer's credit record, history, or rating;

"(e) Altering the buyer's identification to prevent the display of the buyer's credit record, history, or rating." 146 Ohio Laws, Part II, 3628, 3649.

In the case at bar, it is undisputed that plaintiffs gave defendant approximately $1,346.62, of which $446.62 was cash and $900 was trade-in equity. Defendant argues that this consideration was in exchange for the Chevrolet truck, whereas plaintiffs argue that the consideration was in exchange for a package of goods and services, including the assistance in getting credit. The argument is moot. The statute merely requires that the defendant "receives, directly from the buyer, money," which defendant does not dispute that it did. Defendant must

also sell, provide, or perform, or represent that it will sell, provide, or perform the services listed in the statute. There is no requirement in the statute that the money received from the buyer be consideration for services provided by the credit services organization.

The question remains whether defendant sold, provided, or performed a service obtaining an extension of credit for the buyer, or represented such to the buyer. Again, defendant has not disputed that it assisted plaintiffs in obtaining an extension of credit from Banc One. Therefore, defendant is a "credit services organization" as that term is defined in R.C. 4712.01(C).

Defendant further argues that it cannot be held liable under the Ohio Credit Services Organization Act because plaintiffs are not "buyers" as that term is defined in the Act. Under R.C. 4712.01(A), "buyer" is defined as "an individual who is solicited to purchase or who purchases the services of a credit services organization." Defendant argues that plaintiffs did not purchase any services from it, but merely purchased goods, namely, the Chevrolet truck.

"Purchase" is defined in Black's Law Dictionary as the "[t]ransmission of property from one person to another by voluntary act and agreement, founded on a valuable consideration." Black's Law Dictionary (6 Ed.1990) 1234. "Consideration" is defined as "a performance or a return promise [that is] bargained for." Restatement of the Law 2d, Contracts (1981), Section 71(1).

Defendant argues that the money given by plaintiffs was consideration for the truck only, and not consideration for any of the services provided by defendant. However, it is difficult to separate the goods received from the services. Nor does defendant's argument that the services were not paid for because plaintiffs could have left without buying a vehicle have merit. If plaintiffs left before purchasing a vehicle, the services provided by defendant had no value, since it did not lead to an extension of credit to plaintiffs. There has been no evidence that once defendant secured credit for customers, those customers were free to use that credit to purchase items besides defendant's merchandise.

Nor does the affidavit of Helen MacMurray, Assistant Ohio Attorney General, submitted by defendant, lead to a different result. MacMurray affirms that the Office of the Attorney General does not consider an automobile dealer a credit services organization under R.C. 4712.01. However, the opinion of the Attorney General's office is not binding on this court.

For the foregoing reasons, defendant's motion for summary judgment must be denied. In addition, plaintiffs are entitled to summary judgment on the issue of whether defendant violated the Ohio Credit Services Organization Act. However, plaintiffs still have to prove damages to recover. Further, plaintiffs have not pled sufficient facts to allow them summary judgment on the issue of the Ohio

Consumer Sales Practice Act. Thus, plaintiffs' motion for summary judgment is granted in part and denied in part.

*Judgment accordingly.*